## T. B. CLEMENTS v. ROBERT WOLFE, et al.

Eastern Section. July 26, 1930.

Petition for Certiorari denied by Supreme Court, October 18, 1930.

E. R. Taylor and A. T. Drinnon, both of Morristown, for appellant.
W. T. Coleman and E. F. Smith, both of Morristown, for appellee.

THOMPSON, J.  The complainant, T. B. Clements, sued the defendants, Robert Wolfe and W. M. Wolfe, upon the following note:

"$2400                              Idol, Tenn. 12/20/1921.

"Twelve months after date for value received we promise to pay to the order of W. M. Wolfe two thousand and four hundred dollars with int. at 8% per annum from date.

"'The undersigned principal and endorsers of this note waive demand, notice and protest thereof, and we agree that if this note is placed in the hands of an attorney at law for collection, or has to be sued on, that we will pay ten per cent attorneys

fees in addition to the principal and interest, which fee shall be added to and become a part of the judgment.

"Robt. Wolfe,

"Henry Wolfe."

Said note bore the following endorsement:

"I sign the within note to T. B. Clements as his property this note extended until Dec. 20, 1923.

"W. M. Wolfe."

At the time the suit was brought Henry Wolfe was dead. The defendant, W. M. Wolfe, was insolvent. He made no defense to the suit and no pro confesso was taken against him. The defendant Robert Wolfe, defended the suit. On the final hearing the Chancellor dismissed the complainant's suit at his cost, and he has appealed to this Court and has assigned errors.

There is some controversy in the testimony about the facts, but we will state them as we think the greater weight of the evidence shows them to be.

Robert Wolfe, W. M. Wolfe and Henry Wolfe were brothers. Prior to 1915 they and a brother or sister inherited some land which they divided among themselves. W. M. Wolfe's share was about 200 acres.

On February 13, 1925, W. M. Wolfe executed his note for $2147.79, to J. C. Mallicoat, and on the same day conveyed his 200 acres of land to J. N. Myers, Trustee, to secure the payment of said note. A little later W. M. Wolfe executed a second deed of trust on said land to secure an indebtedness of about $1200 which he owed to L. S. Sloat.

Shortly prior to December 20, 1921, Mallicoat and Sloat filed a suit in the Chancery Court against W. M. Wolfe to foreclose their mortgages.

W. M. Wolfe appealed to Robert Wolfe for aid, and an agreement was reached between them that Robert Wolfe would give to W. M. Wolfe $1600 in cash, and his (Robert Wolfe's) note for $2400; that W. M. Wolfe would use the $1600 in cash to pay off the Sloat indebtedness; that W. M. Wolfe would sell the $2400 note and would pay off the Mallicoat indebtedness with the proceeds; that W. M. Wolfe would execute to Robert Wolfe his note for $4,000, secured by a mortgage which would become a first lien on said land. Henry Wolfe for the purpose of aiding W. M Wolfe also agreed to sign the $2400 note so that W. M. Wolfe could more easily get the money on it.

Pursuant to said agreement W. M. Wolfe executed and delivered to Robert Wolfe his note for $4,000, secured by a deed of trust conveying said land to Henry Wolfe, Trustee. This note and deed of trust were on the same paper and were dated and acknowledged on

December 13, 1921. Robert Wolf turned over to W. M. Wolfe $1600 in cash, and W. M. Wolfe paid off the Sloat loan, which, with interest and court costs, amounted to about that sum. Sloat's suit was of course dismissed. Then on December 20, 1921, Robert Wolfe executed to W. M. Wolfe his note for $2400, and Henry Wolfe, as he had promised to do, also signed this note. It is of course the note sued upon in this cause.

Shortly after receiving the $2400 note, W. M. Wolfe took it to two banks and attempted to sell it. One of said banks offered to buy it for $2,000, but both W. M. Wolfe and Mallicoat (who had agreed to hold up his suit for the time being) thought that this discount rate of $400 was too high. The other bank refused to consider buying it at all. So, W. M. Sloat, being unable to sell the note, held it until and after its maturity. We think that Robert Wolfe knew that W. M. Wolfe had not been able to sell said $2400 note and still had possession of it.

Now to go back a little. At the time Robert Wolfe turned over to W. M. Wolfe the $1600 in cash and the $2400 note, W. M. Wolfe was indebted to one Condra by note in the sum of $2160. Henry Wolfe and the complainant, T. B. Clements, were accommodation endorsers on this note. As we understood the record, said Condra note was not due at the time Robert Wolfe turned over to W. M. Wolfe the $1600 in cash and the $2400 note.

But by the time the $2400 note fell due, i. e., December 20, 1922, the Condra note was due and Condra was demanding payment.

On January 6, 1923, which was some 16 or 17 days after the maturity of the $2400 note, W. M. Wolfe went to the complainant's residence where and when the following took place: W. M. Wolfe told complainant that he had the $2400 note on Robert Wolfe and that he had gotten it in a trade. He suggested that he endorse and assign said $2400 note to complainant and that complainant pay said Condra note and give him (W. M. Wolfe) his (complainant's) note for the difference which they figured to be $306.15. But he told complainant that he (complainant) would have to give Robert Wolfe additional time within which to pay the $2400 note, because if he (complainant) forced him (Robert Wolfe) to pay said note at that time he (Robert Wolfe) would force a sale at a sacrifice of everything that he (W. M. Wolfe) had. Pursuant to this agreement W. M. Wolfe endorsed said $2400 note as follows:

"I sign the within note to T. B. Clements as his property this note extended until Dec. 20, 1923.

"W. M. Wolfe."

He then delivered said note to complainant, and complainant executed and delivered to him his (complainant's) note for $306.15.

Complainant then paid and took up the Condra note. All of this was without the knowledge or consent of Robert Wolfe.

Sometime later Robert Wolfe asked W. M. Wolfe to surrender to him the $2400 note. W. M. Wolfe put him off by telling him that said note was somewhere at his (W. M. Wolfe's) home and that he would look for it, etc. Robert Wolfe seems not to have made any further demands upon W. M. Wolfe for the surrender of said note, and complainant seems not to have made any demand upon Robert Wolfe for payment of said note for a year and a half or more. Robert Wolfe continued holding the $4000 note and deed of trust securing the same. He never at any time offered to surrender these to W. M. Wolfe.

On January 24, 1925, W. M. Wolfe sold and conveyed his land to Robert Wolfe for a recited consideration of $4000 cash. But it appears that the real consideration was $40 per acre, i. e., about $8,000. As near as we can get at it, Robert Wolfe paid for the land as follows:

1. The $1600 cash which he turned over to W. M. Wolfe on or about December 20, 1921.

2. He in the early part of 1925, and after he knew that complainant was holding the $2400 note, gave his note to Mallicoat in payment and discharge of Mallicoat's mortgage indebtedness against the land. This note was in the sum of $3300, and at the time of the taking of the depositions in this cause, he had reduced this note to $2,000. He had to pay this Mallicoat indebtedness so as to make his $4000 mortgage a first lien on the land and protect the $1600 cash which he had given to W. M. Wolfe.

3. He and his mother paid to complainant (by giving him their note which he or she or both of them later paid) a mortgage indebtedness of W. M. Wolfe on the land amounting to $1448.45.

In addition to the foregoing payments Robert Wolfe testified without contradiction as follows:

"I paid him (W. M. Wolfe) $1200, and an account that he owed Henry. I paid him thirteen hundred and some odd dollars, another security debt over $1300.

"Q. Who was that going to? A. Going to John Mills and Grant Green."

We might state also that W. M. Wolfe testified that Robert Wolfe by paying him and by paying debts for him fully paid him for the land, and that he (W. M. Wolfe) was still indebted to Robert Wolfe.

So, it rather clearly appears that Robert Wolfe paid to and for W. M. Wolfe the full purchase price of the land without including said $2400 note in the payments, and if he now has to pay said note he will have in effect paid said Mallicoat indebtedness twice. If he

does not have to pay said $2400 note, complainant will have paid only an indebtedness for which he was already liable as an endorser —plus a note of $306.15.

Since complainant took the $2400 note from W. M. Wolfe on January 6, 1923, after its maturity, it becomes important to determine the then respective rights of Robert Wolfe and W. M. Wolfe with reference to said note. Robert Wolfe was holding W. M. Wolfe's $4000 note secured by a deed of trust on the land, and partly upon the strength of which note and deed of trust he had given W. M. Wolfe $1600. But W. M. Wolfe had used said $1600 to discharge a previous lien on the land and thus put Robert Wolfe's lien one step nearer a first lien. Since Robert Wolfe was still holding said $4000 note and deed of trust securing the same, W. M. Wolfe could still have sold said $2400 note, but would have been under contract obligations to Robert Wolfe to apply the proceeds in discharging said Mallicoat mortgage indebtedness. W. M. Wolfe also probably had the right to require said Robert Wolfe to pay said $2400 note, provided he (W. M. Wolfe) made certain in some way to Robert Wolfe that he (W. M. Wolfe) would immediately pay and discharge said Mallicoat mortgage indebtedness. But W. M. Wolfe had no right to require said Robert Wolfe to pay said $2400 note without making it certain to Robert Wolfe that he (W. M. Wolfe) would immediately pay and discharge said Mallicoat mortgage indebtedness. And certainly W. M. Wolfe had no right to transfer the said note to complainant in furtherance of a plan which did not even contemplate a payment and discharge of said Mallicoat mortgage indebtedness, or any other mortgage indebtedness on the land, and at a time when he (W. M. Wolfe) could not himself possibly pay said Mallicoat mortgage indebtedness.

Now, complainant taking said $2400 note after its maturity, received it subject to these equities existing between Robert Wolfe and W. M. Wolfe, and we think the Chancellor correctly held that he is not entitled to recover on said note from Robert Wolfe.

It results that in our opinion there was no error in the decree of the Chancellor dismissing complainant's suit at his cost, and said decree will be affirmed, with costs.

Portrum and Snodgrass, JJ., concur.